T.C. Memo. 1998-150

UNITED STATES TAX COURT

RONALD R. ARMACOST AND CATHY L. ARMACOST, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19616-96.                    Filed April 27, 1998.

<u>Richard P. Algeo</u>, for petitioners.

<u>Julie L. Payne</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent
determined a deficiency in Ronald and Cathy Armacost's Federal
income taxes for the taxable year 1992 in the amount of $5,470.

---

[1]Section references are to the Internal Revenue Code in
effect for the year at issue.  Rule references are to the Tax
Court Rules of Practice and Procedure.

The sole issue for decision is whether interest payments on a promissory note made by Ronald Armacost (petitioner) to his ex-wife are deductible.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in Liberty Lake, Washington, at the time their petition was filed.

FINDINGS OF FACT

Petitioner married Linda L. Armacost in 1963. During their marriage, petitioner and Linda Armacost accumulated numerous assets, including stocks, bonds, a personal residence, vacation properties, and other liquid assets. They also acquired several commercial properties on which they developed, constructed, and operated gas stations and convenience stores.

Petitioner and Linda Armacost resided only in the community property States of Washington or Idaho during their marriage; therefore most of their assets were owned in undivided one-half interests.

In January 1985, petitioner and Linda Armacost legally separated. They agreed to divide their property equally and executed a Separation Agreement designating which property would be allocated to whom. All their property, along with its "value at date of dissolution", was divided as follows:

### Ronald Armacost

1. Lake home at Priest Lake, Idaho ($50,000);
2. All boats, boat motors and trailers, and motorcycles plus household furnishings ($25,000);
3. Hawaiian condominium at Kihei, Maui ($61,000); and
4. Debt on family home (-$49,000).
5. All capital stock in Budget Oil Co., Inc. ($101,000);
6. One-half of all investment stocks ($0);
7. One-half of all royalty rights in Procto-Therm ($0);
8. One-half of all limited partnership interests in oil well, rotator, and handlebar ($0);
9. One-half of existing partnership interests in Cable Marque and Dinestalon ($0);
10. Individual retirement accounts ($4,800);
11. One-half interest in Ronald Armacost's Budget Oil Co., Inc. pension and profit sharing plan ($40,000);
12. Commercial property located at N. 7902 Division (-$38,000);
13. Commercial property located at Division and Augusta ($128,000);
14. Commercial property located at University City ($195,000);
15. Commercial property located on Pines Road ($400,000);
16. Commercial property located in Moscow, Idaho ($145,000);
17. Building at Third and Maple ($50,000);
18. Commercial property located at Liberty Lake ($247,000); and
19. Bank Note - McDonald's Property (-$135,000).
20. Ranch Land located in Adams County, Idaho ($20,000).

       Total Assets                      $1,244,800

### Linda Armacost

1. Family Home ($70,000);
2. Vehicles and household furnishings ($25,000); and
3. Account balances ($4,000).
4. McDonald's property ($580,000);
5. Miller real estate contract ($16,000);
6. Lang real estate contract ($5,000);
7. One-half of all investment stocks ($0);
8. One-half royalty rights in Procto-Therm ($0);
9. One-half partnership interest in Cable Marque and Dinestalon ($0);
10. One-half of all limited partnership interests in oil well, rotator, and handlebar ($0);
11. One-half interest in Ronald Armacost's Budget Oil Co., Inc. pension and profit-sharing plan ($40,000).

       Total Assets                      $740,000

Petitioner received more property upon dissolution of the marriage than did Linda Armacost, so he signed a promissory note in the amount of $250,000 payable to Linda Armacost to equalize the distribution of assets. The note was payable for 20 years, at 10 percent interest. Linda Armacost also was granted a security interest in the properties transferred to petitioner.

Petitioner made payments to Linda Armacost under the note, and deducted the interest paid on his Federal income tax return for taxable year 1992. Respondent disallowed the deduction on the ground that the interest was nondeductible personal interest under section 163(h)(2).

OPINION

Respondent contends that the interest on the note was incurred for purposes of dividing community property incident to divorce. Section 1041 provides that no gain or loss shall be recognized on the transfer of property incident to divorce, and the property is treated as having passed to the transferee by gift. Respondent argues that the interest here is nondeductible because the underlying debt is traced back to the divorce, a personal purpose. This is essentially the same argument respondent made in Seymour v. Commissioner, 109 T.C. 279 (1997).

In the Seymour case, the taxpayer incurred indebtedness to his ex-spouse upon his divorce. Respondent disallowed his interest deduction on the ground that section 1041 characterized

the taxpayer's interest as personal interest under section 163(h).  In that case, the taxpayer prevailed because we concluded that section 1041 does not require indebtedness to a former spouse incident to divorce to be characterized as personal interest for purposes of section 163(h)(1).  Seymour v. Commissioner, supra at 286.  If the taxpayer can satisfy the requirements of section 163(h)(2)(A) through (E), the interest will be properly deductible under section 163(a).  Id.

Generally, section 163 provides that interest on indebtedness is deductible by the taxpayer in the year it is paid.  Sec. 163(a).  However, substantial limitations are placed on this general rule which may limit or prohibit the taxpayer from deducting indebtedness interest at all.

Section 163(h) provides that for an individual taxpayer, personal interest is nondeductible.  Personal interest is defined in section 163(h)(2) as the residual of what remains after considering five enumerated exceptions.  These exceptions are as follows:

> (A)  interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),
>
> (B)  any investment interest (within the meaning of subsection (d)),
>
> (C)  any interest which is taken into account under section 469 in computing income or loss from a passive activity of the taxpayer,

(D)  any qualified residence interest (within the meaning of paragraph (3)), and

(E)  any interest payable under section 6601 on any unpaid portion of the tax imposed by section 2001 for the period during which an extension of time for payment of such tax is in effect under section 6163 or 6166 or under section 6166A (as in effect before its repeal by the Economic Recovery Tax Act of 1981).

Sec. 163(h)(2).  The exception relating to investment interest is the basis for petitioner's claim.

Interest on indebtedness must be allocated in the same manner as its underlying debt.  Sec. 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987).  Underlying debt is allocated by tracing specific disbursements of the proceeds to specific expenditures.  Id.  If the underlying debt is incurred as a personal expenditure, the interest on that debt may not be deducted under section 163 except to the extent such interest is qualified residence interest.  Sec. 1.163-8T(a)(4)(ii), Example (1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987).

But if the underlying debt is incurred to acquire investment property, the interest on that debt is deductible under section 163 as investment interest.  Sec. 163(h)(2)(B).  Investment interest is defined as any interest paid on indebtedness properly allocable to investment property.  Sec. 163(d).  Investment property includes property producing gross income from interest, dividends, annuities or royalties not derived in the taxpayer's

trade or business, or property held in the course of the taxpayer's trade or business which is neither a passive activity nor an activity in which the taxpayer materially participates. Sec. 163(d)(5)(A), 469(e)(1).

To determine whether the promissory note signed by petitioner is indebtedness traceable to investment property, we look at the nature of the underlying assets acquired by petitioner as a result of the divorce. To the extent the note was made to acquire Linda Armacost's community interest in their investment property, the interest paid on that note will be properly characterized as investment interest and will be deductible under section 163. To the extent, however, the note was made to acquire her interest in noninvestment property, the interest will not be deductible as investment interest under section 163. Respondent's determinations are presumed correct, and petitioner has the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The Separation Agreement is silent as to which properties received by petitioner are attributable to the $250,000 note. But the lack of such designation in the Settlement Agreement does not affect the underlying character of the assets. The value differential between what petitioner received and what Linda Armacost received may appear to be equal to the total property distribution upon the divorce. However, examination of the total

property values is not the end of our analysis. Based on the record, we are able to classify each property as either investment property or noninvestment property.

Petitioner received personal property, a condominium in Maui, and a lake house in Idaho. He also assumed the outstanding debt on the family home. Petitioner testified that these assets are noninvestment properties, and the record supports such a finding.

The evidence also shows that petitioner's stock, partnership interests and royalty rights, IRA, pension and profit plan and commercial real estate are investment property.[2]

Linda Armacost received the family home, cash, and personal property, which we find is noninvestment property. For her share of investment property, Linda Armacost kept the McDonald's property, two land sale contracts, her interest in investment stocks and partnership interests, and one-half of their pension and profit sharing plan. The character of these assets is reflected in the record, and the parties do not dispute such a designation.

There is some dispute, however, as to the ranch located in Adams County, Idaho, and a condominium unit located in Liberty Lake, Washington. Respondent contends that the ranch land

---

[2]The value of petitioner's investment property is reduced by his liability on the bank note on Linda Armacost's McDonald's property.

allocated to petitioner is noninvestment community property. Petitioner, however, testified that he inherited the ranch from his father.  In addition, section 7, paragraph 11 of the Settlement Agreement states that the ranch land is the "sole and separate property" of the petitioner.  Property acquired by bequest or devise is ordinarily that spouse's separate property. See In re Estate of Salvini, 397 P.2d 811 (Wash. 1964). Therefore, the ranch is not community property, and Linda Armacost had no right to receive payment for any interest in the property.  See Poe v. Seaborn, 282 U.S. 101 (1930); Hansen v. Blevins, 367 P.2d 758 (Idaho 1962); In re Estate of Salvini, supra.  Because petitioner already owned the ranch in its entirety, we find that no part of the $250,000 note is attributable to the acquisition of this property.

Next, we look at the condominium unit situated in Liberty Lake.  Respondent argues that a condominium unit valued at $247,000 was allocated to petitioner as noninvestment property. Petitioner, however, contends that the property located in Liberty Lake was not actually a condominium, but was one of his commercial convenience stores.  After careful review of the record, we agree with petitioner that the property the parties valued at $247,000 is not a condominium unit and should be characterized as commercial investment property.

The parties submitted Joint Exhibit 4-D, Schedule of Assets Received Upon Marital Dissolution (Schedule of Assets), which refers to a commercial property in Liberty Lake valued at $247,000. The Schedule of Assets only refers to one property in Liberty Lake. The Separation Agreement, however, refers to two properties in Liberty Lake. A condominium is described in section 7, paragraph 18 of the Separation Agreement, and commercial real estate abutting Liberty Lake Road is found in section 7, paragraph 20.

For reasons unknown, a condominium in Liberty Lake is not listed on the Schedule of Assets. Petitioner testified, however, that the only noninvestment property he received outside of the personal property was the condominium in Maui and the house on the lake in Idaho. Everything else, petitioner claims, is commercial investment property. His testimony is supported by the Schedule of Assets, which categorizes the Liberty Lake property valued at $247,000 as commercial property.

Respondent's argument that the Liberty Lake property valued at $247,000 is a noninvestment property is unsupported by the record. We do not know the nature of the condominium in Liberty Lake, but its character does not affect our finding that the commercial property in Liberty Lake valued at $247,000 is includable in petitioner's acquisition of investment property from Linda Armacost.

Based on our findings above, we draw the following conclusions regarding the value of properties distributed:

|                  | NonInvestment | Investment   |
|------------------|---------------|--------------|
| Ronald Armacost  | [1]$87,000    | [2]$1,137,800 |
| Linda Armacost   | [3]99,000     | [4]641,000   |

[1]Includes lake home in Idaho ($50,000), personal property and household furnishings ($25,000), condominium in Maui ($61,000) and debt on the family home (-$49,000).

[2]Includes all capital stock in Budget Oil Co., Inc. ($101,000), one-half of all investment stocks, royalty rights, and partnership interests ($0), IRA ($4,800), one-half interest in pension and profit sharing plan ($40,000), commercial property located at N. 7902 Division (-$38,000), commercial property located at Division and Augusta ($128,000), commercial property located at University City ($195,000), commercial property located on Pines Road ($400,000), commercial property located in Moscow, Idaho ($145,000), commercial property located at Liberty Lake ($247,000), real estate at Third and Maple ($50,000), and a bank note on the McDonald's property (-$135,000).

[3]Includes the family home ($70,000), vehicles and household furnishings ($25,000), and account balances ($4,000).

[4]Includes McDonald's property ($580,000), Miller real estate contract ($16,000), Lang real estate contract ($5,000), one-half interest in investment stocks, royalty rights and partnership interests ($0), one-half interest in pension and profit sharing plan ($40,000).

Petitioner received $12,000 less than Linda Armacost in noninvestment property value, and $496,000 more than Linda Armacost in investment property value. This means that petitioner is entitled to his one-half community interest of

$6,000 from Linda Armacost for noninvestment property, and Linda Armacost is entitled to her one-half community interest of $248,000 from petitioner for investment property. Linda Armacost's deficit in investment property nearly equals the $250,000 promissory note signed by petitioner. Thus we conclude that the debt is attributable to the acquisition of Linda Armacost's community share of investment property, and the interest on that indebtedness is deductible pursuant to section 163(d).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.